**IN THE CIRCUIT COURT**
**FOR BALTIMORE COUNTY, MARYLAND**

PHILIP DECOHEN                                    *
4231 Blaine St., N.E.
Washington, D.C. 20019                            *

   *on his own behalf and on behalf of*    *
   *all others similarly situated,*

               *

      Plaintiffs,                      *

               *    Case No. C-10-11579

     v.                                 *

ABBASI LLC d/b/a                                  *
NATION AUTO OF MARLOW HEIGHTS,                    WDQ10CV3157
4533 St. Barnabas Road                            *
Temple Hills, Maryland 20748                      *
<u>Serve on</u>:
Esmat Ali                                         *
4533 St. Barnabas Rd.
Temple Hills, Maryland 20748,                     *

CHEVY CHASE BANK, *a division of*                 *
CAPITAL ONE, N.A.,
1680 Capital One Drive                            *
Mclean, Virginia 22102
<u>Serve on</u>:                                   *
CSC-Lawyers Incorporating Service
Company                                           *
7 St. Paul Street, Suite 1660
Baltimore, Maryland 21202,                        *

And                                               *

BEACON INDUSTRIES WORLDWIDE, INC.                 *
Suite 209
5610 NW 12th Avenue                               *
Fort Lauderdale, Florida 33309
<u>Serve on</u>:                                   *
CSC-Lawyers Incorporating Service Company
7 St. Paul Street, Suite 1660                     *
Baltimore, Md 21202

      Defendants.

RECEIVED AND FILED
2010 SEP 29  PM 2:33
CLERK OF THE CIRCUIT COURT
BALTIMORE COUNTY

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Philip Decohen ("Named Plaintiff"), on his own behalf and on behalf of all others similarly situated, by and through his undersigned attorneys, sues Defendants Abbasi LLC d/b/a Nation Auto of Marlow Heights ("Nation Auto"), Chevy Chase Bank, a division of Capital One, N.A. ("Chevy Chase") and Beacon Industries Worldwide, Inc. ("Beacon").

1.     This is a Complaint against Defendants for violating statutory, common law and contractual obligations.  Named Plaintiffs and the Class are persons who entered into an expensive so-called "Guaranteed Asset Protection Deficiency Waiver Addendum" serviced by Beacon – hereinafter referred to as the "GAP Agreement" or "phony GAP Agreement"- when financing their motor vehicle purchases in Maryland. The GAP Agreements were represented as "debt cancellation agreements" – legitimate products which are defined by Maryland law as agreements "between a credit grantor and a borrower which provide[] for cancellation of the remaining loan balance in the event of theft or total destruction of the collateral for the loan after application of the proceeds of any insurance maintained on the collateral for the loan." However, the GAP Agreements sold to Plaintiff and the Class are phony debt cancellation agreements -- not true debt cancellation agreements -- promise illusory benefits, and their costs may not be financed under Maryland's credit statutes.

2.     Since 1941 when Maryland's Retail Installment Sales Act ("RISA") was enacted, the General Assembly has been wary of allowing car dealers to include charges for products of questionable value in credit contracts, recognizing that when interest charges are applied to these costs, considerable damage can be done to the buyer's financial wellbeing.  It therefore structured

RISA, and the subsequent Credit Grantor Closed End Credit Provisions ("CLEC") enacted in 1983, to allow the financing of only those products or services it expressly approved in the credit contracts by which Marylanders financed their vehicle purchases. These provisions have saved Maryland car buyers many millions of dollars over the years.

3.     When the General Assembly amended CLEC and RISA to allow the cost of optional debt cancellation agreements to be financed under the laws governing financing of motor vehicle sales, RISA and CLEC, the product was carefully defined as noted above. By specifying an exacting definition, the General Assembly did not intend to open the door to "look alike" products such as the phony GAP Agreement which is the subject of this case, products which take advantage of the good name and actual value of legitimate debt cancellation agreements.

4.     To understand why the GAP Agreement sold and financed by the Defendants in this action is not a true debt cancellation agreement that may be financed under CLEC and RISA, one need look no further than what happened to the Named Plaintiff.   Mr. Decohen made timely payments each month on his credit contract until he suffered a total loss of his vehicle. This should have triggered cancellation of his remaining debt under a true debt cancellation agreement, excusing Mr. Decohen from paying the "gap" which remained between what he owed on his loan for his vehicle and the amount paid by his insurance carrier for its total loss (this gap being about $1,500). Mr. Decohen's claim under the GAP Agreement he purchased was denied because the terms of the GAP Agreement did not, in fact, provide for "cancellation of the remaining loan balance," as a true debt cancellation agreement would have provided. Instead, buried on the reverse side of the phony GAP Agreement, were terms that included a deceptive

and opaque formula re-defining ordinary English phrases such as "remaining loan balance" to something other than the actual balance of the loan, in such a way that the remaining loan balance would virtually *never* be cancelled in the event of the theft or total destruction of the vehicles purchased by Plaintiff or the proposed Class. The phony GAP Agreement defines the "remaining loan balance" which it will pay off as the original amount financed divided by the number of months left to pay on the loan. Such a formula is cleverly calculated to insulate the providers from liability under the phony GAP agreement by disregarding interest charges. These interest charges create the very problem that is the primary justification for selling a GAP Agreement in the first place. The GAP Agreement is not, in fact, a true debt cancellation agreement which can be financed under Maryland law.

5.     Maryland law prohibits including the cost of anything other than true debt cancellation agreements in credit contacts such as those of the Plaintiff and the Class. Maryland law also enables Named Plaintiffs and the Class to seek and recover compensatory damages, statutory penalties and damages, and declaratory and injunctive relief. The Defendants' violations of Maryland law have enriched Defendants unfairly at the expense of Maryland borrowers, a practice this suit seeks to end.

6.     Defendants' use of illegal form phony GAP Agreements in numerous transactions makes this case particularly suitable for resolution through a class action lawsuit.

## PARTIES

7.     Named Plaintiff Philip Decohen is a resident of the District of Columbia. Named Plaintiff purchased a "GAP Agreement" as part of a Maryland credit contract originated by a licensed Maryland motor vehicle dealer, Nation Auto of Marlow Heights ("Nation Auto").

-4-

Nation Auto assigned and sold this credit contract, which financed the Plaintiff's purchase of a 2006 Chrysler Pacifica, to Defendant Chevy Chase Bank, N.A., n/k/a Capital One Bank, N.A.

8.     Defendant Nation Auto of Marlow Heights is a registered and active trade name for Abbasi, LLC, a forfeited Maryland Limited Liability Company.  Nation Auto of Marlow Heights was a car dealer in Marlow Heights, Maryland.

9.     Defendant Chevy Chase Bank n/k/a Capital One Bank ("Chevy Chase") is a national bank with its principal place of business in Virginia.

10.     Defendant Beacon Industries Worldwide, Inc. is a corporation with its principal place of business in Florida.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this case under Md. Cts. & Jud. Pro. §6-103(b), as Defendants transact business and perform work and service in the State of Maryland, contract to supply services in the State of Maryland, and regularly do and solicit business and engage in other persistent courses of conduct in the State of Maryland.

12.     Venue is proper in this Court under Md. Cts. & Jud. Pro. §6-201, as Defendants carry on a regular business and habitually engage in a vocation in Baltimore County, Maryland.

## FACTUAL ALLEGATIONS

13.     On or about September 29, 2007, Named Plaintiff Philip Decohen purchased a used Chrysler Pacifica ("the Pacifica") from Nation Auto of Marlow Heights, a licensed Maryland motor vehicle dealer, through the Retail Installment Sale Contract attached hereto as **EXHIBIT 1** (the "Credit Contract"). The Pacifica was purchased and used primarily for personal, household and family purposes.

14.    The Credit Contract affirmatively elects to be governed under Subtitle 10 of Title 12 of the Commercial Law article (i.e., Maryland's Credit Grantor Closed End Credit Provisions - hereinafter "CLEC") (*See* **EXHIBIT 1**, reverse side).

15.    The Credit Contract includes the purchase of an "Optional Debt Cancellation Agreement" for $600.00.

16.    Named Plaintiff's GAP Agreement on the letterhead of Defendant Beacon Industries Worldwide, Inc. is attached hereto as **EXHIBIT 2** – and a brief review of the document demonstrates that it is not a debt cancellation agreement under Maryland law. The GAP Agreement does not agree to cancel the remaining loan balance in the event of a total loss or theft of the collateral. Instead, the GAP Agreement agrees only to cover the "Unpaid Net Balance" less the "Actual Cash Value" of the vehicle – a formula which has no relationship to cancelling the actual amount which remains outstanding on a loan due to the meaning of its defined terms "Unpaid Net Balance" and "Actual Cash Value."

17.    For example, under the terms of the Plaintiff's GAP Agreement, the "Unpaid Net Balance" is not calculated by determining what the remaining loan balance is as a matter of fact – and actually has no relationship to the actual unpaid balance on the account. Instead, it is a number calculated by taking the original amount financed (i.e. the principal amount of the loan) and dividing it by the number of monthly payments to be made on the loan, then multiplying that figure by the number of monthly payments remaining on the loan. This calculation does not take into account interest accruing on the loan or the payments which actually remain due under the contract; it does not cancel the remaining loan balance and thus does not meet the requirements of a true debt cancellation agreement under RISA or CLEC and is not allowed to be financed

-6-

under those statutes. In Maryland it is lawful to finance only true debt cancellation agreements which actually "provide[] for cancellation of the remaining loan balance." Under such true debt cancellation agreements, the only manner in which the actual remaining loan balance may be modified when determining the coverage of a debt cancellation agreement is to subtract any portion of the loan balance which is due to delinquent payments, past due charges, late fees, unearned interest, unearned rental payments, or the amount of insurance deductibles if agreed by the parties. Md. Comm. L. §§12-601(p), 12-1001(l). Agreements such as the phony GAP Agreements purchased by Plaintiff and the Class which modify the remaining loan balance in any other way, and do not actually provide for cancellation of the remaining loan balance, are not debt cancellation agreements that may be financed under Maryland's credit statutes.

18.     In addition, in financed vehicle purchase transactions in Maryland, a legitimate debt cancellation agreement must pay the actual remaining loan balance "after application of the proceeds of any insurance maintained on the" vehicle. Md. Comm. L. §§12-601(h), 12-1001(h). The phony GAP Agreements purchased by Plaintiff and the Class, however, allow the "remaining loan balance" to be determined either as the amount the insurance company agrees to pay for the loss of the vehicle, or the "retail" value for the vehicle in the Kelly Blue Book or the National Auto Dealer's Association official used car guide – whichever is greater (i.e. whichever results in less coverage). Agreements such as the phony GAP Agreements purchased by Plaintiffs and the Class, which allow the remaining loan balance to be modified by something other than the application of the proceeds of insurance, are not debt cancellation agreements that may be financed under Maryland's credit statutes.

19.     Plaintiff's Credit Contract, including the purchase of the phony GAP Agreement,

-7-

was assigned to Chevy Chase, which accepted the contract and received monthly payments pursuant to that contract.

20.     On or about May 21, 2010, Plaintiff suffered a total loss of the Pacifica.

21.     Plaintiff made a claim to his insurance company for the total loss of the Pacifica. The insurance company paid a total of $12,839.00 for Plaintiff's loss.

22.     In accord with the instructions on the GAP Agreement, Plaintiff also requested cancellation of the amount remaining on his vehicle loan after the application of his insurance payment. Defendant Beacon, as servicer of the GAP Agreement, denied Plaintiff's claim in the letter attached as **EXHIBIT 3**. As revealed in the GAP Calculation Form attached as **EXHIBIT 4**, Defendant Beacon denied the claim because Beacon's calculation of the Actual Cash Value of the vehicle was $13,475 – far greater than the actual cash value amount as determined and paid by the insurance company – and Beacon's calculation of the "Unpaid Net Balance" was $12,908.83 - far less than the actual amount remaining to be paid on the account. In this way, through unfairly and deceptively defining terms such as "Actual Cash Value" and "Unpaid Net Balance," the GAP Agreement failed to cancel the debt remaining on Plaintiff's account, and failed to meet the requirements of a true debt cancellation agreement that may be financed under Maryland law.

23.     If the Plaintiff had purchased the kind of true "debt cancellation agreement" contemplated by Maryland's credit statutes – which is how the GAP Agreement was described in writing on the Credit Contract – Plaintiff would not have had to make any payments toward the remaining loan balance on his vehicle loan for the Pacifica after application of the insurance proceeds. However, since the GAP Agreement was not a true debt cancellation agreement, the

Case 1:10-cv-03157-WDQ   Document 2   Filed 11/08/10   Page 9 of 28

remaining $1,504.29 amount of his loan balance has not been cancelled and Defendant Chevy Chase Bank has demanded payment in this amount from the Plaintiff.

24.     Maryland laws which govern the financed sale of vehicles including the sales to Plaintiff and the putative Class – including CLEC and RISA – do not permit the financing of the phony GAP Agreements sold to Plaintiff and the putative Class because the form GAP Agreement fails to provide the benefits upon which the Maryland legislature insisted before allowing such products to be financed under Maryland's credit statutes, as set forth in CLEC, §12-1001(h) and §12-1005(c)(1), and RISA, §12-601(h) and §12-606(b)(8).

25.     The use of the phony GAP Agreements in the transactions of Plaintiff and the Class deprived Plaintiff and members of the Class of the benefits Maryland law was intended to secure. Maryland law does not permit the financing of the phony GAP Agreements in question – it only permits the financing of true debt cancellation agreements which cancel the outstanding debt remaining on an account. The deceptive and misleading terms of the phony GAP Agreements – which were designed and which operated to ensure that payment would rarely if ever be made in connection with the phony GAP Agreement –swindled Plaintiff and the Class and enriched the Defendants without providing value to the Plaintiff or the Class.

26.     The provisions of CLEC and RISA which govern the use of debt cancellation agreements – and which permit the financing of true debt cancellation agreements but not the deceptive and phony GAP Agreements at issue here - are intended to protect borrowers like the Plaintiff and the Class, and to ensure that Maryland consumers will not be tricked into financing the cost of valueless products as part of their vehicle purchases.

27.     Absent strict compliance with the terms of CLEC and RISA – including the

prohibition on financing the phony GAP Agreements at issue here - a Maryland credit grantor is subject to significant liability for actual and statutory damages which Plaintiff seeks to recover on behalf of himself and the other members of the Class.

28.     Where, as here, a credit grantor finances a phony rather than a true debt cancellation agreement, the credit grantor "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." Md. Comm. L. §12-1018(a) (2). A credit grantor who knowingly violates any provision of the CLEC is liable for statutory damages of three times the interest, costs, fees and other charges collected in excess of that authorized by CLEC. Md. Comm. L. §12-1018(b). Similarly, under RISA, the holder of a credit contract containing charges for a phony debt cancellation agreement like the one here must "forfeit to the buyer all finance charges paid or payable under the agreement." Md. Comm. L. §12-609(c).

29.     On information and belief, Plaintiffs aver that as a part of their routine business practices in Maryland, Defendant Nation Auto regularly sold and financed the sale of form GAP Agreements which did not constitute true debt cancellation agreements eligible for financing under Maryland's credit statutes in violation of Maryland law for its own financial benefit, and Defendants Beacon and Chevy Chase conspired with Nation Auto and one another to violate the law by committing the acts described above, profiting by, assisting, supporting, and supplementing, instigating, advising, and encouraging the efforts of Nation Auto to violate the law. Among other things, Defendant Beacon provided and sold to Defendant Nation Auto the phony form GAP Agreements, and agreed to act as a servicer for those agreements, and Defendant Chevy Chase agreed to accept assignment of credit contracts financing the GAP

-10-

Agreements – and it collected payments on these contracts – even though each knew those phony GAP agreements could not lawfully be financed under CLEC or RISA. Each benefitted financially from the financing of these phony GAP agreements.

30.      On information and belief, Plaintiffs aver that as a part of their routine business practices in Maryland, Defendant Chevy Chase regularly accepted assignment of credit contracts financing the sale of phony form GAP Agreements which did not constitute debt cancellation agreements that could be financed under Maryland's credit statutes. Defendants Beacon and Nation Auto conspired with Chevy Chase and one another to violate Maryland law by committing the acts described above, profiting by, assisting, supporting, and supplementing, instigating, advising, and encouraging the efforts of Nation Auto to violate the law. Among other things, Defendant Beacon provided the GAP Agreements, and agreed to act as a servicer for those agreements, and Defendant Nation Auto agreed to assign credit contracts financing the GAP Agreements to Chevy Chase. Each defendant knowingly profited by and conspired with one another to profit by the sale and financing of debt cancellation agreements each knew could not be financed under credit contracts governed by CLEC or RISA.

31.      On information and belief, Plaintiffs aver that notwithstanding Defendants' failure to comply with the mandatory terms of CLEC and RISA, Defendants Nation Auto and Chevy Chase have knowingly assessed, demanded and attempted to collect or have collected amounts from Named Plaintiffs and the Class in payment for illegally financed GAP Agreements, for which the borrowers were not liable as a matter of law. Defendant Chevy Chase also has unlawfully demanded payment from Named Plaintiff and others in the Class of alleged deficiency balances which remain because the GAP Agreement in question failed to pay off the

loan which remained after application of the buyer's insurance proceeds following a total loss.  In

addition, Defendants Nation Auto and Chevy Chase have collected and not returned to Named

Plaintiff and the Class interest, costs, fees and other charges which each must forfeit on each

credit contract governed by CLEC and RISA. Unless and until this Court grants the declaratory

and injunctive relief Plaintiffs seek through this action, Defendants will continue to engage in

business practices which violate Maryland law and which enrich them at the expense of

Maryland borrowers.

     32.      Each Credit Contract in the transactions of Plaintiff and other Class members

contains the following contract provision, required pursuant to Md. Comm. L. §14-1302, and

referred to hereinafter as the "Holder Notice":

> **ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT
> TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD
> ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED
> PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY
> HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID
> BY THE DEBTOR HEREUNDER. (emphasis in original).**

### CLASS ACTION ALLEGATIONS

     33.      Named Plaintiffs bring this action on behalf of a Class which consists of:

> **All persons whose credit contracts include a charge for
> the cost of a phony GAP Agreement.**

Excluded from the Class are (a) those individuals who now are or have ever been executives of

the Defendants and the spouses, parents, siblings and children of all such individuals, (b) any

individuals against whom a judgment has been granted on the account at issue on or before the

date of the filing of this Complaint, (c) any individual who was granted a discharge pursuant to

the United States Bankruptcy Code or state receivership laws after the date of his or her Credit

Contract; (d) all persons whose Credit Contracts were originated more than twelve (12) years prior to the filing of this Complaint; and (e) any individual otherwise obligated on a Credit Contract which elects CLEC that was satisfied more than six months prior to the filing of this Complaint.

34.     The Class, as defined above, is identifiable.  The Named Plaintiff is a member of the Class.

35.     The Class consists, at a minimum, of several hundreds or thousands of persons who entered into credit contracts in Maryland governed by CLEC or RISA which financed the cost of a GAP Agreement, and is thus so numerous that joinder of all members is clearly impracticable.

36.     There are questions of law and fact which are not only common to the Class but which predominate over any questions affecting only individual class members.  The common and predominating questions include, but are not limited to:

(a) Whether the GAP Agreement in question constitutes a debt cancellation agreement eligible for financing under CLEC and RISA;

(b) Whether Defendants Nation Auto or Chevy Chase violated CLEC and RISA by systematically utilizing phony GAP Agreements;

(c) Whether Defendants Nation Auto or Chevy Chase knowingly violated CLEC provisions by systematically utilizing phony GAP Agreements which failed to comply with Maryland law and therefore should be required to forfeit three times the amount of interest, fees and other charges collected in excess of those allowed by CLEC;

(d) Whether Defendants systematically misrepresented in writing that Plaintiff and

-13-

the Class were purchasing debt cancellation agreements of value, when the phony GAP Agreements they purchased had little or no value and in fact, could not lawfully be financed in credit contracts governed by CLEC and RISA.

(e) Whether Defendants systematically and unlawfully collected payments in connection with the financed sale of the phony GAP Agreements and benefitted financially from the illegal financing of these products

(f) Whether Defendants Nation Auto and Chevy Chase systematically breached the credit contracts each accepted for each Class member by failing to comply with Maryland law;

(g) Whether Defendants Nation Auto and Chevy Chase systematically assessed, attempted to collect and/or collected interest, costs, fees and other charges from members of the Class that they had no legal right to demand or collect, and for which the Class members were not liable;

(h) Whether the Defendants conspired between and among each other to commit the unlawful acts described herein, and are jointly and severally liable to Plaintiff and the Class; and,

(i) Whether declaratory and injunctive relief is proper, and a writ of mandamus should issue, to prevent Defendants from continuing to finance or conspire to finance the sale of phony GAP Agreements in violation of Maryland law and to compel Defendants' compliance with Maryland law.

37. Claims of the Named Plaintiff are typical of the claims of the respective members of the Class within the meaning of Maryland Rule 2-231(a)(3), and are based on and arise out of

similar facts.

38.    The Named Plaintiff is an adequate representative of the Class within the meaning of Maryland Rule 2-231(a)(4).  The Named Plaintiff does not have a conflict of interest with members of the Class.  Moreover, Named Plaintiff is represented by Counsel who are experienced in class actions and will protect the interests of members of the Class.

39.    The prosecution of separate actions by individuals members of the Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Maryland Rule 2-231(b)(1)(A).

40.    Defendants' actions are generally applicable to the respective Class as a whole, and Plaintiff seeks equitable remedies with respect to the Class as a whole, within the meaning of Maryland Rule 2-231(b)(2).

41.    Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Maryland Rule 2-231(b)(3).

42.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

43.    Plaintiffs' counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

## COUNT ONE – CREDIT GRANTOR CLOSED END CREDIT PROVISIONS
### (Against All Defendants)

44.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

45.     Maryland's Credit Grantor Closed End Credit Provisions, Md. Code Ann., Comm. L. §12-1001 *et seq.*, authorize credit grantors to provide closed end credit under certain circumstances and subject to certain limitations. Defendants Nation Auto and Chevy Chase are "credit grantors" within the meaning of Md. Comm. L. §12-1001(b).

46.     Md. Comm. L. §12-1005 regulates and limits the kind of charges and the amount of charges which Defendants Nation Auto and Chevy Chase may charge and which they may collect from their customers in connection with extensions of credit governed by this statute. Charges which are not enumerated by §12-1005, other than interest, may not be charged in a CLEC transaction.

47.     Although Md. Comm. L. §12-1005(c)(1) authorizes credit grantors to finance the cost of true optional debt cancellation agreements, the phony GAP Agreement at issue is not eligible for financing as a debt cancellation agreement under CLEC because it does not meet the definition of a debt cancellation agreement under the statute.

48.     In violation of Md. Comm. L. §12-1005, Defendant Nation Auto charged and collected from Named Plaintiff and the Class impermissible charges for the phony GAP Agreements – charges which are not permitted to be financed under CLEC.

49.     Defendant Nation Auto knowingly violated the aforesaid provisions of Maryland's Credit Grantor Closed End Credit statute.

50.     Defendant Nation Auto prepared and Defendant Chevy Chase and, on information and belief, other lenders accepted assignment of Retail Installment Contracts which contained the unlawful charges and collected finance charges on the cost of phony GAP agreements which could not legitimately be financed under a credit contract governed by CLEC.

-16-

51.     Chevy Chase violated CLEC by accepting and collecting on the Credit Contracts which contained charges for phony GAP Agreements that violated CLEC. Chevy Chase had knowledge of the contents of the phony GAP Agreements for which Plaintiff and the Class were charged, and thus knowingly violated CLEC when accepting and collecting on the Credit Contracts of Plaintiff and the Class.

52.     Defendants Nation Auto, Beacon and Chevy Chase conspired with one another to engage in violations of CLEC by committing the acts described above, profiting by, assisting, supporting, facilitating and supplementing, instigating, advising, and encouraging the efforts of one another which violated the law. Among other things, Defendant Beacon provided and sold to Defendant Nation Auto the form GAP Agreements, and agreed to act as a servicer for those agreements including following their assignment to lenders such as Defendant Chevy Chase, Defendant Nation Auto agreed to sell the phony GAP Agreements and to finance the cost of the GAP Agreements knowing the contents of the GAP Agreements, and Defendant Chevy Chase agreed to accept assignment of the Credit Contracts containing charges for the GAP Agreements also knowing the contents of the GAP Agreements.

53.     Defendant Chevy Chase also is liable for the unlawful activities of Defendant Nation Auto pursuant to the Holder Notice in the Credit Contracts of Named Plaintiff and the Class.

## COUNT TWO – CONSUMER PROTECTION ACT
### (Against All Defendants)

54.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

-17-

55.    Each vehicle purchase and financing transaction by the Plaintiff and the Class members is governed by the Consumer Protection Act, Md. Comm. L. §§ 13-101 *et seq.*

56.    Defendants each fall within the definition of a "merchant" who "directly or indirectly either offers or makes available to consumers any consumer goods, consumer services, or consumer credit" [Md. Comm. L. §13-101(g)] and are thus governed by the Consumer Protection Act.

57.    Section 13-303 of the Commercial Law Article prohibits unfair or deceptive trade practices in the sale and lease, and in the offer for sale and lease, of consumer goods and services, and in the extension of consumer credit.

58.    The Defendants committed unfair and deceptive trade practices in violation of the Consumer Protection Act through their respective schemes to mislead and cheat Named Plaintiffs and the Class.  As part of these schemes, Defendant Nation Auto sold and financed the sale of the form GAP Agreements which did not constitute debt cancellation agreements eligible for financing under CLEC or RISA, and Defendants Auto Nation, Beacon and Chevy Chase conspired with one another to violate the law by committing the acts described above, profiting by, assisting, supporting, facilitating and supplementing, instigating, advising, and encouraging the efforts of each which violated the law.  Among other things, Defendant Beacon provided and sold to Defendant Nation Auto the form GAP Agreements, and agreed to act as a servicer for those agreements, and Defendant Chevy Chase agreed to accept assignment of credit contracts financing the GAP Agreements and it collected interest on charges and payment for these agreements which were prohibited under Maryland law.

-18-

59.     In addition, Plaintiffs aver that as a part of their routine business practices in Maryland, Defendant Chevy Chase regularly accepted assignment of credit contracts financing the sale of form GAP Agreements which did not constitute debt cancellation agreements eligible to be financed under CLEC or RISA, and collected payments under those credit contracts, with knowledge of the contents of the GAP Agreements.  By doing so, Chevy Chase engaged in unfair and deceptive practices in violation of the Consumer Protection Act.  Defendants Nation Auto, Beacon and Chevy Chase conspired with one another to violate the Consumer Protection Act by committing the acts described above, profiting by, assisting, supporting, facilitating and supplementing, instigating, advising, and encouraging the efforts of each which violated the law.  Among other things, Defendant Beacon provided the GAP Agreements, and agreed to act as a servicer for those agreements, and Defendant Nation Auto agreed to sell the phony form GAP Agreements and did so, and agreed to assign credit contracts financing the GAP Agreements to Chevy Chase. Defendant Chevy Chase agreed to accept assignment of the Credit Contracts containing charges for the GAP Agreements with knowledge that the GAP Agreements could not be financed under Maryland law.

60.     In addition, Plaintiffs aver that notwithstanding Defendants' failure to comply with the mandatory terms of CLEC and RISA, Defendants Nation Auto and Chevy Chase have knowingly assessed, demanded and attempted to collect or have collected amounts from Named Plaintiffs and the Class payment for illegally financed phony GAP Agreements, for which the borrowers were not liable as a matter of law.  In addition, Defendants Nation Auto and Chevy Chase have collected and not returned to Named Plaintiff and the Class interest, costs, fees and other charges which each must forfeit on each credit contract governed by CLEC and RISA.

61.     By engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose the material facts set forth above where the failure to disclose deceived or tended to deceive, the Defendants committed unlawful trade practices, in violation of the Maryland Consumer Protection Act, Md. Comm. L. §§13-303(1), (2) and (3) and §§13-301(1), (2)(i), (ii) and (iv) and/or (3).

62.     Defendants' conduct as set forth above had the capacity, tendency or effect of deceiving Named Plaintiff and the Class, who in fact entered into the transactions and paid the wrongful charges levied, causing them injury and loss.

63.     As a result of the unfair and deceptive trade practices in violation of the Consumer Protection Act by Defendants, Named Plaintiff and the Class paid more in their financing contracts than was actually due, and either incurred finance charges on the amount of the overcharge or lost the use of those funds.

64.     Defendant Chevy Chase is liable for the unlawful activities of Defendant Nation Auto pursuant to the Holder Notice in the Credit Contracts of Named Plaintiff and the Class.

## COUNT THREE – RETAIL INSTALLMENT SALES ACT
### (Against All Defendants)

65.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

66.     Maryland's Retail Installment Sales Act ("RISA"), Md. Code Ann., Comm. Law II, §12-601 *et seq.*, regulates and limits the kinds of charges which the Nation Auto may charge and which Nation Auto and Chevy Chase may collect from their customers in connection with installment sale agreements governed by this statute.

67.     Md. Comm. L. §12-609(b) provides that service or other charges not specifically provided for in that section may not be included within a retail installment sale of a motor vehicle.

68.     In violation of Md. Comm. L. §12-609(b), Nation Auto included in installment sales agreements, and charged and collected charges for the phony GAP Agreements which were not specifically provided for in that section, in violation of RISA.

69.     Nation Auto prepared and Chevy Chase and other lenders accepted assignment of installment sale agreements governed by RISA which contained the unlawful charges and collected finance charges on the amount of the overcharge for the phony GAP Agreements.

70.     As a consequence, Nation Auto and Chevy Chase must forfeit all finance charges paid or payable under the installment sales agreements governed by RISA, per Md. Comm. L. §12-609(c).

71.     Defendant Nation Auto, Beacon and Chevy Chase conspired with one another to engage in their violations of RISA by committing the acts described above, profiting by, assisting, supporting, and supplementing, instigating, advising, and encouraging the efforts of Nation Auto and Chevy Chase to violate the law.  Among other things, Defendant Beacon provided and sold to Defendant Nation Auto the form GAP Agreements, and agreed to act as a servicer for those agreements including following their assignment to lenders such as Defendant Chevy Chase.  Defendant Nation Auto agreed to assign Credit Contracts including charges for the phony GAP Agreements, knowing the contents of those agreements, to Defendant Chevy Chase, and Defendant Chevy Chase agreed to accept assignment of the Credit Contracts

-21-

containing charges for the GAP Agreements with knowledge that the phony GAP Agreements could not be financed under Maryland law.

72.     Defendant Chevy Chase is liable for the unlawful activities of Defendant Nation Auto pursuant to the Holder Notice in the Credit Contracts of Named Plaintiff and the Class.

## COUNT FOUR - BREACH OF CONTRACT
### (Against All Defendants)

73.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

74.     Maryland's CLEC and RISA laws were in effect at the time the Class members' credit contracts – including the financed purchase of the phony GAP Agreements - were originated.  The provisions of the CLEC and RISA statutes become a part of the contracts just as if the parties expressly included the CLEC or RISA provisions in their credit contracts. In addition, the contracts of Named Plaintiff and other members of the Class explicitly refer to and, thus, incorporate the CLEC provisions as contract terms.

75.     When Defendants Nation Auto and Chevy Chase violated CLEC or RISA as set forth above, Nation Auto and Chevy Chase materially breached their contracts with Plaintiff and the Class.

76.     As a result of Nation Auto and Chevy Chase's breaches of contract, Named Plaintiff and members of the Class have been damaged.  Named Plaintiffs and members of the Class have been deprived of the substantial rights granted under CLEC and RISA, including the right to purchase a debt cancellation agreement of value without the risk of purchasing an illusory GAP Agreement, and the right to be free from charges not specifically authorized in the

RISA or CLEC statutes. In addition, Named Plaintiff and the Class also sustained financial damages as a result of Defendant Nation Auto and Chevy Chase's failure to return all of the interest, costs, fees and other charges collected on their loans, and Named Plaintiffs and the Class sustained other damages and losses including the amounts they paid for the illusory, phony debt cancellation agreements.

77.     Defendants Nation Auto, Beacon and Chevy Chase conspired with another to engage in their breaches of contract by committing the acts described above, profiting by, assisting, supporting, facilitating and supplementing, instigating, advising, and encouraging the efforts of one another which violated the law. Among other things, Defendant Beacon provided and sold to Defendant Nation Auto the GAP Agreements, and agreed to act as a servicer for those agreements including following their assignment to lenders such as Defendant Chevy Chase.

78.     Defendant Chevy Chase is liable for the unlawful activities of Defendant Nation Auto pursuant to the Holder Notice in the Credit Contracts of Named Plaintiff and the Class.

## COUNT FIVE - DECLARATORY AND INJUNCTIVE RELIEF
### (Against All Defendants)

79.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

80.     This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Cts. & Jud. Pro. §3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the credit contracts of the Named Plaintiff and members of the Class and the consumer protections embodied in CLEC and RISA.

81.    Defendants maintain that the GAP Agreements are legitimate debt cancellation agreements which may be sold and financed in RISA or CLEC credit contracts.

82.    Named Plaintiffs and members of the Class have received or will receive collection notices from one or more Defendants and/or creditors or debt collectors demanding payment of amounts including amounts attributable to the sale of phony GAP Agreements Plaintiff asserts could not be financed under CLEC or RISA.

83.    These practices continue and will continue unless and until this Court declares and affirms that Defendants may not collect any amounts attributable to  phony debt cancellation agreements financed in the  credit contracts signed by Plaintiff and the Class, and may not collect any interest, fees, costs or other charges in connection with their credit contracts.

84.    This presents an actual, judicable controversy between the parties relating to the construction of the credit contracts under which Defendants have sold or conspired to sell debt cancellation agreements ineligible for financing under CLEC and RISA,  and the application of CLEC and RISA to those contracts because Defendants have sought or likely will seek to collect on the amounts attributable to the sale of the GAP Agreements, or attributable to interest, costs, fees or other charges which may not be collected due to the Defendants' sale or conspiracy to sell phony debt cancellation agreements which may not be financed under CLEC or RISA.

85.    Named Plaintiffs and members of the Class have a right to be free from Defendants' attempts to collect interest, fees, costs and other charges which are not collectible as a matter of law under their contracts.

86.    The benefits to Named Plaintiffs and members of the Class in obtaining an injunction outweigh any potential harm Defendants would incur as a result of an injunction,

-24-

under the balance of the convenience test, as Defendants have no legal or contractual right to collect legally impermissible amounts from Named Plaintiff and members of the Class, and Named Plaintiff and members of the Class would greatly benefit from being relieved of Defendants' attempts to collect these illegal charges.

87.    Named Plaintiff and members of the Class will suffer irreparable injury unless the requested injunctions are granted, as Defendants will continue to attempt to collect, and collect, interest, costs, fees and other charges from them in violation of the law, and Defendants will report erroneous and derogatory information to the credit reporting agencies regarding Named Plaintiff and members of the Class based on the illegally imposed charges.

88.    The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing Defendants from violating the statutory and common law of the State of Maryland in the sale of GAP Agreements, and a compelling interest in seeing the laws of the State of Maryland obeyed.

89.    Named Plaintiff and members of the Class are likely to succeed on the merits of this action, as the CLEC and RISA statutes do not permit the financing of the phony GAP Agreements at issue.

## COUNT SIX - RESTITUTION AND UNJUST ENRICHMENT
### (Against All Defendants)

90.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

91.    By paying money attributable to the financing of phony debt cancellation agreements which could not be financed under credit contracts governed by CLEC or RISA and,

interest, fees, costs and other charges claimed by Defendants, Named Plaintiff and members of the Class conferred a benefit of these illegally collected charges upon Defendants.

92.     Defendants accepted the benefits conferred upon them by Named Plaintiff and members of the Class when they accepted the money paid toward illegally financed phony debt cancellation agreements, interest, costs, fees and other charges.  Further, Defendants were aware of, and had knowledge of, the benefits conferred on them, as they demanded those benefits.

93.     Defendants' collection, acceptance and retention of these charges, when Defendants were not entitled to the charges as a matter of law, is and was and continues to be unjust and inequitable, and Defendants have not refunded the charges to Named Plaintiff and members of the Class.  Defendants should not be permitted to retain the benefits of those illegal charges.

94.     Defendants' continued collection and withholding of the illegal charges is improper.

95.     Named Plaintiff and members of the Class conferred these unjust benefits upon Defendants after and as a result of Defendants' misconduct as set forth herein.

96.     Defendant Chevy Chase is liable for the unlawful activities of Defendant Nation Auto pursuant to the Holder Notice in the Credit Contracts of Named Plaintiff and the Class.

WHEREFORE, Plaintiffs pray that:

A.     The Court certify this action as a class action pursuant to Maryland Rule 2-231;

B.     The Court enter a declaratory judgment establishing that Defendants may not collect any interest, fees, costs or other non-principal charges on a loan account of Named Plaintiffs and members of the Class;

-26-

C.    The Court enter an order granting Named Plaintiffs and members of the Class a preliminary and permanent injunction prohibiting Defendants from collecting or attempting to collect interest, fees, costs or other non-principal charges from Named Plaintiff and members of the Class;

D.    The Court order that Defendants pay to Named Plaintiff and members of the Class the statutory civil penalties imposed by CLEC, Md. Comm. L. §12-1018(a)(2) by returning to Named Plaintiff and members of the Class all sums each paid as interest, costs, fees or other non-principal charges and/or the statutory civil penalties imposed by RISA, Md. Comm. L. §12-609(c) by returning all finance charges paid or payable under the applicable Credit Contract;

E.    Pursuant to Md. Comm. L. §12-1018(b), the Court enter judgment in favor of Named Plaintiff and members of the Class against Defendants in an amount equal to three times the interest, costs, fees, and other non-principal charges which Defendants collected in excess of that allowed by CLEC;

F.    The Court enter judgment in favor of Named Plaintiff and members of the Class against Defendants in the amount of all sums paid by Named Plaintiffs and members of the Class toward  phony debt cancellation agreements not eligible for financing under CLEC or RISA, plus interest, fees, costs and other non-principal charges;

G.    The Court enter judgment in favor of Named Plaintiff and the Class against Defendants for such compensatory damages as the evidence shall warrant;

H.    The Court enter an award of pre-judgment and post-judgment interest on all sums

-27-

awarded to Named Plaintiff and members of the Class;

I.    The Court award to Named Plaintiff and members of the Class reasonable counsel fees and the costs of these proceedings; and,

J.    The Court order such other and further relief as the nature of this case may require.

Respectfully submitted,

QUINN, GORDON & WOLF, CHTD.

By: _Martin E. Wolf_

Martin E. Wolf
Richard S. Gordon
Benjamin H. Carney
QUINN, GORDON & WOLF, CHTD.
102 W. Pennsylvania Avenue, Suite 402
Towson, Maryland 21204
(410) 825-2300
FAX: 410-825-0066

Mark H. Steinbach
O'TOOLE, ROTHWELL, NASSAU & STEINBACH
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550
FAX: 202-775-0008

ATTORNEYS FOR PLAINTIFFS