IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PHILLIP DECOHEN,
*on his own and on behalf of*
*all others similarly situated,*

    Plaintiff,

    v.                              CIVIL NO.: WDQ-10-3157

ABBASI, LLC, *et al.*,

    Defendants.

MEMORANDUM OPINION

Phillip Decohen sued Abbasi, LLC ("Abbasi"), Capital One, N.A. ("Capital One"),[1] and Beacon Industries Worldwide, Inc., ("Beacon") for violations of Maryland's Credit Grantor Closed End Credit Provisions and related claims. For the following reasons, Capital One and Beacon's motions to dismiss will be granted.

I. Background[2]

On September 29, 2007, Decohen, a resident of Washington, DC, bought a Chrysler Pacifica from Abbasi. Compl. ¶¶ 1, 13.

---

[1] The complaint incorrectly identifies "Chevy Chase Bank, a division of Capital One, N.A." as the defendant. The correct defendant is "Capital One, N.A., a successor by merger to Chevy Chase Bank, F.S.B." Complaint, Ex. C at ¶¶ 1, 11 (Patrick D. Nolan Aff., Nov. 4, 2010). The case style will be amended to reflect the correct name.

[2] For the motion to dismiss, the well-pled allegations in Decohen's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

He bought the car for $22,669.16 through a retail installment sale contract (the "Credit Contract"), which included an optional $600.00 Guaranteed Asset Protection Deficiency Waiver Addendum ("the GAP Agreement"). Id. ¶¶ 1, 15-16; Compl. Ex. A at 1. Beacon serviced the GAP Agreement. Compl. ¶ 1. The Credit Contract was assigned to Capital One,[3] which accepted Decohen's monthly payments. Id. ¶ 19.

The Credit Contract stated that it was governed by "Federal law and Maryland law," and was "subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code." Compl., Ex. A. at 4. It also contained a Holder Notice providing:

> Any Holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor.

Id.

The GAP Agreement stated:

> The named Customer is responsible to the named Dealer/Assignee under the terms of the [Credit Contract] for the amount of any early termination liability resulting from a Total Loss of the Vehicle. Due to this addendum being in effect, the Dealer/Assignee agrees to cancel a portion of the Customer's indebtedness in the event of a Total Loss of the Vehicle as defined herein.

---

[3] On July 30, 2009, Chevy Chase Bank, F.S.B. converted to a national association, Chevy Chase Bank, N.A., and merged with Capital One. Capital One was the surviving entity, and Chevy Chase Bank, N.A. ceased to exist. Nolan Aff. ¶¶ 8-12.

2

> The [Gap Agreement] will pay the amount equal to the Unpaid Net Balance less the Actual Cash Value (ACV) of the Vehicle both as defined herein.

Compl., Ex. B at 1.

"Unpaid Net Balance" was defined as "the original 'Amount financed' divided by 'number of payments' multiplied by number of months remaining from the Date of Loss to the final payment due date less all cancelable items refunds." Id. at 2. "No consideration [would be] given for any deferred, late, or delinquent payments." Id. "Actual Cash Value" was "the Customer's Primary Insurance gross settlement, less deductible not exceeding $1,000, or the National Automobile Dealer's Association (N.A.D.A.) official used car guide's 'Retail' value or Kelley Blue Book Guide's 'Retail' value whichever is the Greater." Id. at 2.

The GAP Agreement also stated that it "may not necessarily pay off the Unpaid Net Balance due by the customer," and that "[a]ll claims calculations" would "strictly adhere to the terms and conditions of [the GAP Agreement] and therefore such calculations may not match or equal the calculation determined by the original lender." Id.

On May 21, 2010, Decohen "suffered a total loss of the Pacifica." Id. ¶ 20. He was paid $12,839.00 for the loss by his insurance company. Id. ¶ 21. He then made a claim to cancel the remaining amount owed under the Credit Contract. Id. ¶ 22. On August 13, 2010, Beacon denied Decohen's claim because

the "Unpaid Net Balance was less than the Actual Cash Value resulting in No GAP being payable." Compl., Ex. C at 1.[4]

Because no coverage was provided under the GAP Agreement, Decohen was required to pay the $1,504.29 difference between his insurance payout and the balance actually remaining under the Credit Contract. Compl. ¶¶ 22-23. He alleges that this would not have happened had he purchased a "true" debt cancellation agreement. *Id.* He also alleges that Abbasi regularly sold, and Chevy Case regularly accepted assignment of, "credit contracts financing the sale of phony form GAP Agreements" which cannot be financed "under Maryland's credit statutes." *Id.* ¶¶ 30-31.

On September 29, 2010, Decohen sued the Defendants in the Circuit Court for Baltimore City for violating the Maryland Creditor Grantor Closed End Credit Provisions ("CLEC"),[5] the Maryland Consumer Protection Act ("MCPA"),[6] and the Maryland Retail Installment Sales Act ("RISA"),[7] and for breach of

---

[4] Beacon calculated the Pacifica's "Actual Cash Value" to be $13,475—more than Decohen had been paid by his insurance company—because that was the car's N.A.D.A. retail guide value. Compl., Ex. D. The "Unpaid Net Balance" was $12,908.83, based on the original loan balance ($22,669.16) divided by the number of payments (72) multiplied by the number of payments remaining (41). *Id.* Thus, the car's Actual Cash Value was greater than the Unpaid Net Balance.

[5] Md. Code Ann., Comm. L. §§ 12-1001, *et seq.*

[6] Md. Code. Ann., Comm. L. §§ 13-101, *et seq.*

[7] Md. Code. Ann., Comm. L. §§ 12-601, *et seq.*

contract, declaratory relief, and restitution and unjust enrichment. ECF No. 2.

On November 8, 2010, Capital One removed the case to this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453, and 28 U.S.C. § 1332(d)(2).[8] ECF No. 1. On November 15, 2011, Capital One moved to dismiss. ECF No. 7. Beacon moved to dismiss on November 18, 2010. ECF No. 9.

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l*

---

[8] CAFA creates federal jurisdiction over (and thus allows for removal of) "multi-state class actions with substantial stakes." *Bullard v. Burlington Northern*, 535 F.3d 759, 761 (7th Cir. 2008). It applies when the amount in controversy exceeds $5,000,000, the putative class consists of at least 100 proposed members, and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332 (d)(2). The notice of removal states that the amount in controversy is approximately $5,551,634.02, "Capital One has identified at least 1,145 retail installment sales contracts that include a GAP Agreement," and there is minimal diversity. Notice of Removal ¶¶ 12-27.

*Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(quoting *Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

B. Capital One's Motion to Dismiss

Capital One argues that Decohen's claims should be dismissed because he has failed to state any basis for relief under Maryland law, and if he had stated Maryland law claims they would have been preempted by the National Banking Act

("NBA"), 12 U.S.C. §§ 1 et seq. Capital One's Mot. to Dismiss 7-30.

1. Failure to State a Claim

a. RISA Claim

Capital One argues that Decohen's RISA claim must be dismissed because the Credit Contract is not subject to that statute. *Id.* 27. Decohen contends that RISA applies to all installment sales agreements, including the Credit Contract. Pl's Opp'n 25-26.

RISA is contained in Subtitle 6 of Title 12 of Maryland's commercial law code. Under the CLEC, "[i]f a credit grantor elects . . . to make a loan under this subtitle, the provisions of Subtitle . . . 6 . . . of this title do not apply to the loan." Md. Code. Ann, Comm. L. § 12-1013.1 (b)(1). Here, the Credit Contract is expressly governed by the CLEC; accordingly, RISA does not apply to the loan. *See id.; Biggus v. Ford Motor Credit Co.*, 328 Md. 188, 199-200, 613 A.2d 986 (1992) (creditor elected CLEC through provision stating "[t]he law of Maryland applies to this contract including [the CLEC]"). Accordingly, Decohen's RISA claim will be dismissed.

b. CLEC Claim

Decohen's CLEC claim alleges that Capital One violated the statute by financing a "phony" debt cancellation agreement which did not eliminate his full loan balance. Compl. ¶¶ 44-53. He contends that the CLEC "prohibits charges which it does not

7

expressly provide for," such as the "phony" GAP Agreement. Pl.'s Opp'n 18-21. Capital One argues that the CLEC claim should be dismissed because the statute does not require debt cancellation agreements to "always cancel the entire remaining loan balance." Capital One's Mot. to Dismiss 22-23.

The CLEC provides that "[i]n connection with closed end credit offered and extended . . . a credit grantor may charge and collect the interest and other charges permitted by this subtitle." Md. Code Ann., Comm. L. § 12-1002 (b). "Other charges permitted" include "[t]he cost to the borrower of an optional debt cancellation agreement, provided that the cost of the debt cancellation agreement is separately itemized in the financing agreement." Md. Code. Ann., Comm. L. § 12-1005 (c)(1).

A "debt cancellation agreement" is defined by CLEC as "an agreement between a credit grantor and a borrower which provides for cancellation of the remaining loan balance in the event of theft or total destruction of the collateral for the loan after application of the proceeds of any insurance maintained on the collateral for the loan." Md. Code. Ann., Comm. L. § 12-1001 (h). Thus, a debt cancellation contract as defined under the CLEC is one that eliminates the debtor's "remaining loan balance" after any insurance payout.

"'Remaining loan balance,' when used in reference to a debt cancellation agreement, does not include: (1) Any delinquent

payments; (2) Past due charges; (3) Late payment charges; (4) Unearned interest; (5) Unearned rental payments; or (6) By agreement of the parties, the amount of any primary insurance deductible." Md. Code. Ann., Comm. L. § 12-1001 (1). Accordingly, a debt cancellation agreement does not violate the CLEC simply because it does not extinguish the borrower's full loan balance. *See id.*

Here, the GAP Agreement provided that it would "pay the amount equal to the Unpaid Net Balance less the Actual Cash Value (ACV) of the Vehicle." Compl., Ex. B at 1. "Actual Cash Value" was defined as "the Customer's Primary Insurance gross settlement, less deductible not exceeding $1,000, or the National Automobile Dealer's Association (N.A.D.A) official used car guide's 'Retail' value or Kelley Blue Book Guide's 'Retail' value whichever is the Greater." *Id.* at 2.

The definition of "debt cancellation agreement" does not provide that a creditor may apply a retail guide value to calculate the amount of debt cancelled. Instead, it only provides that such an agreement cancels the remaining loan balance less "the proceeds of any insurance." Md. Code. Ann., Comm. L. § 12-1001 (h). Further, none of the items that may be excluded from "remaining loan balance" allow for the creditor to deduct the difference between the insurance payout and the car's retail value.

9

Accordingly, Decohen's complaint is sufficient to show that the GAP Agreement is not a "debt cancellation agreement" within the meaning of the CLEC, and therefore may not be financed "in connection with closed end credit offered and extended" under the statute. Md. Code. Ann., Comm. L. § 1002(b). The CLEC claim will not be dismissed on the basis that Decohen's allegations fail to state a basis for relief under Maryland law.

   c. MCPA Claim

Decohen's complaint alleges that the Defendants violated the MCPA by "mislead[ing]" him and selling him a "GAP Agreement[] which did not constitute [a] debt collection agreement[]" under the CLEC, and by using "deceptive and misleading terms" within the GAP Agreement. Compl. ¶¶ 25, 54-64. Capital One argues that Decohen's MCPA claim should be dismissed because his allegations do not show any unfair or deceptive trade practices under the Act. Capital One's Mot. to Dismiss 30.

The MCPA provides that "[a] person may not engage in any unfair or deceptive trade practice" in connection with the extension of consumer credit or sale of consumer goods. Md. Code Ann., Comm. L. § 13-303. The Act defines unfair and deceptive trade practices as any "false" or "misleading oral or written statement[s] . . . or other representation[s] [that] ha[ve] the capacity, tendency, or effect of deceiving or misleading consumers." Md. Code Ann., Comm. L. § 13-301. Such

10

practices also include representations that consumer goods or services have a "characteristic [or] benefit. . . which they do not have," and the "[f]failure to state a material fact if the failure deceives or tends to deceive." *Id.*

CLEC violations are not "per se violations of the [MCPA]." *Pittman v. Allright Mortg. Co.*, 165 B.R. 586, 590 (Bankr. D. Md. 1994). Thus, Decohen cannot base his MCPA claim solely on the theory that the GAP Agreement could not be financed under the CLEC. His other allegations are also insufficient to show a deceptive or unfair trade practice. The GAP Agreement does not purport to be a CLEC-defined "debt cancellation agreement," and specifically warns that it "may not necessarily pay off the Unpaid Net Balance due by the customer." Compl., Ex. B. Decohen has not alleged that anyone told him the GAP Agreement would cover his full remaining loan balance, and the terms and calculation used to determine what portion of the loan balance would be canceled are succinctly explained within the two-page document. *See id.*

Decohen has alleged only that the GAP Agreement did not provide the result he wanted, but has not shown that the GAP Agreement or the individuals who sold it to him were misleading or deceptive.[9] Capital One's motion to dismiss will be granted as to this claim.

---

[9] *Cf. B&S Mktg. Enters., LLC v. Consumer Protection Div.*, 153 Md. App. 130, 835 A.2d 215 (2003)(unfair or deceptive trade

d. Breach of Contract Claim

Count IV alleges a claim for breach of contract based on the GAP Agreement's failure to cover Decohen's remaining balance. Capital One argues that this claim should be dismissed because Decohen has merely alleged that the Credit Contract and GAP Agreement were carried out according to their terms. Capital One's Mot. to Dismiss 24-26. Decohen contends that the claim should not be dismissed because the Defendants breached "the terms of CLEC which were incorporated into the contract by reference." Pl.'s Opp'n 22.

To state a claim for breach of contract under Maryland law, Decohen must allege that the Defendants "owed [him] a contractual obligation and that [they] breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645 (2001).

The complaint alleges that Capital One "materially breached" the Credit Contract and GAP Agreement by failing to pay Decohen's remaining loan balance after the total loss of his vehicle. Compl. ¶¶ 73-74. However, nothing in the complaint, Credit Contract, or GAP Agreement shows that Capital One agreed,

---

practice shown when defendants entered into "sale-leaseback" agreements to "buy" electronics from cash-strapped customers for $100, and then "lease" the electronics back to the customer for $30 every 15 days until the $100 plus any late fees were repaid, but defendants did not explain orally or in writing that the customers, some of whom spent over $1,000 to repurchase their electronics, could end their obligation by turning over the electronics that were usually valued well under $100).

or was otherwise required, to cancel Decohen's remaining loan balance. Further, no provision in the CLEC mandates that creditors cancel a remaining loan balance in the event of a total loss. Although Decohen may be entitled to civil remedies under the CLEC because the GAP Agreement did not comply with the statute's requirements, he has not stated a claim for breach of contract.[10]

2. Preemption

Capital One argues that Decohen's CLEC claim should also be dismissed because it is preempted by the NBA. Decohen contends that because Abbasi, not Capital One, originated the loan, Capital One is "an assignee bank . . . subject to all claims which could have been brought against [Abbasi]." Pl.'s Opp'n 9.

"[N]ational banks are controlled by the [NBA] and regulations promulgated thereunder by the Office of the Comptroller of the Currency (OCC)." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007). This "federal control shields national banking from unduly burdensome and duplicative state

---

[10] Given the contract between the parties, Decohen's restitution and unjust enrichment claims fail as a matter of law. See *Janusz v. Gilliam*, 404 Md. 524, 947 A.2d 560, 567 (2008)(claims of unjust enrichment may not be brought when "the subject matter of the claim is covered by an express contract between the parties."). Although Decohen argues that this rule should not apply because Capital One acted with "bad faith," none of his allegations is sufficient to show that Capital One acted in such a manner, and as discussed below, the claim would be preempted under the NBA.

regulation." *Id.* at 11. However, national banks "are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or general purposes of the NBA." *Id.*

OCC preemption regulations provide that state laws which "obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers do not apply to national banks." 12 C.F.R. § 7.4008(d)(1). Accordingly, national banks "may make non-real estate loans without regard to state law limitations concerning . . . [t]he terms of credit [or] [d]isclosure and advertising, including laws requiring specific statements, information, or other contents to be included in . . . credit solicitations, . . . credit contracts, or other credit-related documents." 12 C.F.R. § 7.4008(d)(2).

Under OCC regulations, national banks have authority "to enter into debt cancellation contracts . . . in connection with extensions of credit." 12 C.F.R. § 37.1(a). For NBA purposes, a "[d]ebt cancellation contract" is defined as a "loan term or contractual arrangement . . . under which a bank agrees to cancel all or part of a customer's obligation to repay an extension of credit from that bank upon the occurrence of specified events." 12 C.F.R. § 37.2(f). Thus, the GAP Agreement is a "debt cancellation contract" for NBA purposes. *See id.*

Such debt cancellation contracts are "governed by . . . Federal law and regulations, and not by . . . State law." 12 C.F.R. § 37.1 (b). The regulations prohibit certain terms in debt cancellation and suspension agreements, 12 C.F.R. § 37.3,[11] provide terms for refunds if the debt is terminated or prepaid, 12 C.F.R. § 37.4, mandate certain disclosures, 12 C.F.R. § 37.6, and require national banks to obtain customers' written election to purchase such products, 12 C.F.R. § 37.7. The regulations expressly preempt state regulation of debt cancellation contracts and field preempt such state regulation by providing a "comprehensive scheme of [federal] regulation [that] leaves no room for state law."[12]

Accordingly, the CLEC claim against Capital One, arising from financing of the GAP Agreement, is preempted. OCC treats a

---

[11] Unlike the CLEC, the prohibited terms are those: "(1) Giving the bank the right unilaterally to modify the [debt cancellation agreement]," and "(2) Requiring a lump sum, single payment for the [debt cancellation agreement], where the debt subject to the contract is a residential mortgage loan," 12 C.F.R. § 37.3 (c).

[12] *Spinelli v. Capital One Bank*, 265 F.R.D. 598, 605 (M.D. Fla. 2009)(12 C.F.R. § 37.1 (b) expressly preempts state regulation of debt cancellation contracts and debt suspension agreements; such regulation is also field preempted because OCC regulations provide a "comprehensive scheme of regulation [that] leaves no room for state law"). *See also First Nat'l Bank of E. Ark. v. Taylor*, 907 F.2d 775 (8th Cir. 1990)(NBA provisions authorizing national banks to offer debt cancellation contracts preempted state regulation prohibiting banks from offering such contracts); *Thomas v. Bank of Am. Corp.*, --- S.E.2d ---, 2011 WL 2176189, at *3 (Ga. App. Jun. 6, 2011) (OCC's "extensive framework of regulation indicates an intent to occupy fully the area of debt cancellation and suspension agreements, and therefore amounts to field preemption").

national bank owned retail installment contract (such as the Credit Contract and corresponding GAP Waiver) as the "equivalent of a national bank loan" for regulatory and reporting purposes; that Capital One did not originate Decohen's loan does not change the preemption analysis.[13] The FTC holder rule also does not affect the result.[14] The CLEC claim against Capital One is

---

[13] OCC Interpretive Letter 1095, Feb. 27, 2008, at 3; *Aguayo v. U.S. Bank*, 658 F. Supp. 2d 1226, 1235-36 (S.D. Cal. 2009)(loans purchased by a national bank are "subject to the same regulation" as those originated by the bank, so "it follows that assigned [retail installment contracts] are subject to the same preemption [analysis] as direct loans."). Further, to the extent that Decohen's claim could be interpreted as arising against Chevy Chase F.S.B. it would still be preempted under the Home Owner's Loan Act ("HOLA"), which regulates federal savings banks. *See Parmer v. Wachovia*, 2011 WL 1807218, at *1 (N.D. Cal. Apr. 22, 2011)(preemption result is the same whether HOLA or the NBA is applied; the statutes' preemption provisions "have the same effect" and their regulations are "substantially the same")(citing *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256 (1995)); *In re Washington Mut. Overdraft Prot. Litig.*, 539 F. Supp. 2d 1136, 1153 (C.D. Cal. 2008)("Through HOLA and [its] regulations . . . Congress has occupied the entire field of lending regulation of federal savings institutions.").

[14] The FTC holder rule requires consumer credit contracts to include a notice stating:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2.

Although the rule is "directed at the preservation of consumer claims and defenses," *Boggess v. Lewis Raines Motors, Inc.*, 20 F. Supp. 2d 979, 982 (S.D. W.Va. 1998), it may only be used to "assert a claim against a creditor . . . when the seller's

preempted and will be dismissed.[15]

   C.  Beacon's Motion to Dismiss

Beacon has moved to dismiss all claims because it is not a party to the Credit Contract or Gap Agreement. Beacon's Mot. to Dismiss 2. Beacon argues that because it is not a party to the agreements and all Decohen's claims "are premised on alleged violations of the [Credit] Contract or [GAP Agreement]," Decohen has failed to state any claim against it. *Id.* 2-3. Decohen contends contractual privity that is not required to make Beacon liable because he has alleged that Beacon conspired with the other Defendants. Pl.'s Opp'n 37-39.

To plead civil conspiracy the plaintiff must show: (1) "a confederation of two or more persons by agreement or understanding;" (2) "some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal;" and (3) "actual legal damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154, 916 A.2d 257 (2007). Beacon

---

breach is so substantial that a court is persuaded rescission and restitution are justified." *Comer v. Person Auto Sales, Inc.*, 368 F. Supp. 2d 478, 490 (M.D.N.C. 2005)(holder rule could not be used affirmatively by truck purchaser to make assignee liable for dealer's Truth in Lending Act and state consumer protection violations because the purchaser "failed to demonstrate that [the dealer's] breach . . . rendered the truck practically worthless to him.").

[15] Because all substantive claims will be dismissed against Capital One, the claim for declaratory and injunctive relief based on those claims must also be dismissed.

contends that Decohen has not pled sufficient facts to show that it had an "agreement or understanding" with Abbasi that a tort or other unlawful act would be committed against him. Beacon's Mot. to Dismiss 12-13.

Decohen's only allegations against Beacon are that it "agreed to act as a servicer" of the GAP Agreement and "knowingly profited by and conspired . . . to profit by the sale" of the GAP Agreement. Compl. ¶ 52. These conclusionary allegations do not show Beacon's agreement or understanding that the GAP Agreement would be used to harm Decohen, and are insufficient under *Iqbal* and *Twombly* to state a civil conspiracy.[16] Because all the claims against Beacon are premised on its participation in the insufficiently alleged conspiracy, its motion to dismiss will be granted.

III. Conclusion

For the reasons stated above, the motions to dismiss will be granted.

_____  _____
7/25/11                 William D. Quarles, Jr.
Date                    United States District Judge

---

[16] *See Scharpenberg v. Carrington*, 686 F. Supp. 2d 655, 662 (E.D. Va. 2010)(dismissing business conspiracy claim when complaint contained only "broad brush general allegations" and no factual allegations suggested when or how the defendants entered into an agreement).

18